DARRYL C. SHEETZ (Bar No. 098604)
Email: dcsheetz@aol.com
Law Offices of Darryl C. Sheetz
335 Centennial Way, Suite 100
Tustin, California 92780
Telephone:  (949) 553-0300
Facsimile:   (949) 553-0390

Attorney for Defendants
VLADIMIR BORIS BUGARSKI
VLADISLAV WALTER BUGARSKI, and
ALEKSANDER NEGOVAN BUGARSKI

THOMAS L. GOURDE, (SBN 150483)
RAY & GOURDE, LLP
Email: tgourdelaw@cox.net
111 Pacifica, Suite 120
Irvine, California 92618
Telephone: (949) 825-6520
Facsimile: (949) 825-6544

Attorney for Defendant
mURGENT CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>mURGENT CORPORATION, VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, and ALEKSANDER NEGOVAN BUGARSKI,<br><br>Defendants. | CASE No. SACV11-00626 DOC (SSx)<br><br>**DEFENDANTS JOINT OPPOSITION TO MOTION FOR FINAL JUDGMENT OF DISGORGEMENT AND CIVIL PENALTIES AGAINST ALL DEFENDANTS**<br><br>**DATE: February 27, 2012**<br>**TIME: 8:30 a.m.**<br>**DEPT: Courtroom 9D** |

TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:

1

Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties

Defendants mURGENT CORPORATION, VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, and ALEKSANDER NEGOVAN BUGARSKI, hereby submit the following in opposition to Plaintiff SECURITIES AND EXCHANGE COMMISSION'S Motion for Final Judgment of Disgorgement and Civil Penalties Against All Defendants.

This opposition will be based on the attached Memorandum of Points and Authorities, the Declarations of VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, ALEKSANDER NEGOVAN BUGARSKI, and mURGENT CORPORATION the pleadings and records in this action and upon such oral and documentary evidence as may be presented at the hearing.

```
                                        LAW OFFICES OF DARRYL C. SHEETZ

DATED: February 13, 2012
                                        s/Darryl C. Sheetz_____
                                        DARRYL C. SHEETZ
                                        Attorney for Defendants
                                        VLADIMIR BORIS BUGARSKI
                                        VLADISLAV WALTER BUGARSKI
                                        ALEKSANDER NEGOVAN BUGARSKI

                                        RAY & GOURDE, LLP

DATED: February 13, 2012
                                        s/Thomas L. Gourde_____
                                        THOMAS L. GOURDE
                                        Attorney for Defendant
                                        mURGENT CORPORATION
```

2

Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties

## MEMORANDUM OF POINTS AND AUTHORITIES

1. **INTRODUCTION**

On or about April 21, 2011, Plaintiff SECURITIES AND EXCHANGE COMMISSION (hereinafter "SEC") filed a Complaint against Defendants mURGENT CORPORATION, VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, and ALEKSANDER NEGOVAN BUGARSKI (hereinafter collectively "Defendants") for violation of the federal securities laws.

On or about June 22, 2011, each of the Defendants entered into consents to judgment of permanent injunction and other relief.

On or about June 27, 2011 a Judgment of Permanent Injunction and Other Relief was entered against Defendants. Defendants are:

(1) Permanently restrained and enjoined from violating Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder;

    (a) to employ any devise, scheme, or artifice to defraud;

    (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

(2) Permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933;

    (a) to employ any devise, scheme, or artifice to defraud;

    (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

(3) Permanently restrained and enjoined from violating Section 15(a)(1) of the Exchange Act;

(4) Permanently restrained and enjoined from violating Section 5 of the Securities Act;

    (a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    (b) Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

  (c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. §77h].

(5) Ordered to pay disgorgement of ill-gotten gains, prejudgment interest and a civil penalty pursuant to Section 20(d) of the Securities Act; and prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

(6) Prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

On or about August 1, 2011, the Securities and Exchange Commission (hereinafter "Commission") issued and served Defendants VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI and ALEKSANDER NEGOVAN BUGARSKI with an Order Instituting Public Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934 and Notice of Hearing (hereinafter "OIP"). The Commission deemed that it was "*in the public interest*" to institute the OIP.

On September 21, 2011, the Division of Enforcement, pursuant to Commission Rule 250, 17 C.F.R. §201.250, filed a Motion for Summary Disposition of the Administrative Proceeding as to Respondents VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI and ALEKSANDER NEGOVAN BUGARSKI (hereinafter collectively "BUGARSKIS")

On October 14, 2011, BUGARSKIS filed their Opposition to Motion of Division of Enforcement for Summary Disposition.

On October 25, 2011, the Division of Enforcement filed its Reply to Respondents' Opposition to Motion of Division of Enforcement for Summary Disposition.

On December 8, 2011, Brenda P. Murray, Chief Administrative Law Judge, issued the Initial Decision regarding the Administrative Proceeding and ordered that the Respondents, pursuant to section 15(b)(6)(A) of the Securities and Exchange Act of 1934, be barred from association with a broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization, and from participating in any offering of penny stock.

On January 5, 2012, BUGARSKIS filed their Petition for Review of the Initial Decision.

On or about January 11, 2012, the Commission issued an Order Granting Petition for Review and Scheduling Briefs. BUGARSKIS were ordered to file their brief in support of their petition for review by February 10, 2012. The brief in opposition was ordered to be filed by March 12, 2012, and any reply brief was ordered to be filed by March 26, 2012.

On January 13, 2012, the Commission filed the instant Motion for Final Judgment of Disgorgement and Civil Penalties. In their motion, the Commission is seeking the following orders:

> . . . Defendants are jointly and severally liable for disgorgement of $9,634,872 . . . and prejudgment interest thereon of $1,821,012, for a total of $11,455,884.
>
> * * *
>
> Defendant mUrgent Corporation shall pay a civil penalty in the amount of $8,308,534; Defendant Vladimir Boris Bugarski shall pay a civil penalty in the amount of $457,750; Defendant Vladislav Walter Bugarski shall pay a civil penalty of $398,511; and Defendant Aleksander Negovan Bugarski shall pay a civil penalty of $470,077 . . .

## 2. **DEFENDANTS' INABILITY TO CONTEST THE COMMISSION'S ALLEGATIONS**

On or about June 22, 2011, the Respondents each entered into Consent to Judgment in the instant case. The allegations of the Complaint were not deemed admitted or denied by Defendants. The Commission has a longstanding policy of settling cases on the basis of neither requiring an admission nor permitting a denial by the defendant. (*SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 23 304, 308 (S.D.N.Y. 2010).

Recently, however, the Commission's use of consents has come under scrutiny. In *U.S. Securities and Exchange Commission vs. Citigroup Global Markets Inc.*, Case No. 11 Civ. 7387 (JSR), WL 5903733 (S.D.N.Y. , November 28, 2011), the court has challenged the Commission's long-standing policy of allowing defendants to enter into consent judgments without admitting or denying the underlying allegations.

The court went on to state that "On its face, the SEC'S no-denial policy raises a potential First Amendment problem. [See, *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 23 304 (S.D.N.Y. 2010) – ([H]ere an agency of the United States is saying, in effect, 'Although we claim that these defendants have done terrible things, they refuse to admit it and we do not propose to prove it, but will simply resort to gagging their right to deny it.'; see also *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) – reversing a consent settlement between two parties because the 'injunction,

enforceable through the contempt power, constitute[d] a prior restraint by the United States against the publication of facts which the community has a right to know.').")]

Although Defendants, through the use of the Consents prepared by the SEC, have been denied the ability to set forth a defense, Defendants asks that the Court not to consider the language of the Complaint that sets forth a style of writing that invokes emotions. Words such as "scheme," "boiler-room," "family-controlled," "cold-calls," "fronters," "closers," "ill-gotten gains," all help the Commission to paint a picture that Defendants are some type of mob family running an illegal gambling house. Characterizing the Defendants as villains, makes the severe punishments that the Commission has already obtained through the Consent to Judgments and the SEC'S request for disgorgement and civil penalties totaling over $21,000,000.00 seem somehow reasonable and Defendants are left with no ability to contest the allegations of the complaint without being in violation of the Consents.

Indeed, the Commission continues its overtly dramatic statements by stating in its Memorandum of Points and Authorities in Support of Motion for Final Judgment of Disgorgement and Civil Penalties that: "As a direct result of Defendants' misconduct, at least 130 investors lost their entire investment in the company. (See Memorandum of Points and Authorities in Support of Motion for Final Judgment of Disgorgement and Civil Penalties at page 2, lines 24-25.) This is a new claim by the Commission that was not set forth in the Commission's complaint. The Commission repeats that same statement in the Memorandum of Points and Authorities in Support of Motion

for Final Judgment of Disgorgement and Civil Penalties at page 10, lines 6-7. Defendants are unaware of where the Commission obtained the information it basis this statement on; however, Defendants are unaware of any investor that "lost their entire investment."

Despite the dramatic, negative characterizations the Commission has painted of Defendants, Defendants are really just businessmen attempting to run a successful corporation for the benefit of their shareholders and employees.

### 3. AMOUNT OF GORGEMENT AND PREJUDGMENT INTEREST

The Commission has the burden of showing what is a reasonable amount for disgorgement. Once the Commission shows that its disgorgement figure reasonably approximates the amount of unjust enrichment, the burden of going forward shifts to Defendants to demonstrate clearly that the Commission's disgorgement figure is not a reasonable approximation. See SEC v. Lorin, 76 F.3d 458, 462 (2d Cir. 1996); SEC v. Patel, 61 F.3d 137, 140 (2d Cir. 1995).

In many cases, some of the Commission's most effective investor protection remedies may contribute to defendants' inability to pay amounts owed. For example, to help prevent future violations, the Commission can obtain orders barring wrongdoers from the securities industry. Such bars, however, limit an individual's employment opportunities, and thus may reduce defendants' ability to pay.

In *First Secs. Transfer Sys., Inc.* 52 S.E.C. 392, 397 (1995), the Commission wrote:

> "We are cognizant of the inadvisability of assessing penalties so heavy that the persons against whom they are assessed are unable to pay them. Such a situation results in the expenditure of agency resources in unsuccessful attempts to collect the penalties. Moreover, the imposition of a sanction that cannot be enforced may ultimately render the deterrent message intended to be communicated by the sanction less meaningful."

Although no statutory requirement addresses the inability to pay disgorgement or interest, the Commission considers evidence of ability to pay as a factor in determining whether a Defendant should be required to pay disgorgement and interest. See *Rules of Practice*, 59 SEC Docket 15 1600; Rule 630(a) of the *Commission's Rules of Practice*. The Commission also considers evidence that relates to the extent of the respondent's ability to continue in business and the collectability of the penalty.

When a Defendant is unable to pay a civil penalty immediately, in whole or in part, the Commission looks to the Defendant's ability to pay "within a reasonable period of time," in whole or in part. (Cf. 17 C.F.R. §202.9(a)(3). Moreover, the Commission typically examines a Defendant's ability to pay disgorgement first; if the Defendant has the ability to pay a penalty after paying disgorgement, the Commission will also demand an appropriate penalty amount based on the Defendant's ability to pay. See *Report Pursuant to Section 308(c) of the Sarbanes-Oxley Act of 2002* at 17

(Jan. 24, 2003); *cf. Penalty-Reduction Policy for Small Entities*, 64 SEC Docket 447, 450 (Ma. 27, 1997).

Evaluation of the ability of the Defendant to pay and the guidelines regarding such ability are set forth in Rule 630 of U.S. Securities and Exchange Commission's Rules of Practice Upon Fair Fund and Disgorgement Plans. Rule 630 states as follows:

> (a) *Generally*. In any proceeding in which an order requiring payment of disgorgement, interest or penalties may be entered, a respondent may present evidence of an inability to pay disgorgement, interest or a penalty. The Commission may, in its discretion, or the hearing officer may, in his or her discretion, consider evidence concerning ability to pay in determining whether disgorgement, interest or a penalty is in the public interest.
>
> (b) *Financial Disclosure Statement*. Any respondent who asserts an inability to pay disgorgement, interest or penalties may be required to file a sworn financial disclosure statement and to keep the statement current. The financial statement shall show the respondent's assets, liabilities, income or other funds received and expenses or other payments, from the date of the first violation alleged against that respondent in the order instituting proceedings, or such later date as specified by the

Commission or a hearing officer, to the date of the order requiring the disclosure statement to be filed. By order, the Commission or the hearing officer may prescribe the use of the Disclosure of Assets and Financial Information Form (*see* Form D-A at § 209.1 of this chapter) or any other form, may specify other time periods for which disclosure is required, and may require such other information as deemed necessary to evaluate a claim of inability to pay.

(c) *Confidentiality*. Any respondent submitting financial information pursuant to this rule or Rule 410(c) may make a motion, pursuant to Rule 322, for the issuance of a protective order against disclosure of the information submitted to the public or to any parties other than the Division of Enforcement. Prior to a ruling on the motion, no party receiving information as to which a motion for a protective order has been made may transfer or convey the information to any other person without the prior permission of the Commission or the hearing officer.

Defendant VLADIMIR BORIS BUGARSKI'S (hereinafter "BORIS") financial statement demonstrates that BORIS is unable to pay an amounts for disgorgement, prejudgment interest or civil penalties. (See Declaration of Vladimir Boris Bugarski in

Support of Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties filed concurrently herewith.)

Defendant VLADISLAV WALTER BUGARSKI (hereinafter "WALTER") financial statement demonstrates that WALTER is unable to pay an amounts for disgorgement, prejudgment interest or civil penalties. (See Declaration of Vladislaw Walter Bugarski in Support of Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties filed concurrently herewith.)

Defendant ALEKSANDER NEGOVAN BUGARSKI (hereinafter "ALEK") financial statement demonstrates that ALEK is unable to pay an amounts for disgorgement, prejudgment interest or civil penalties. (See Declaration of Aleksander Negovan Bugarski in Support of Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties filed concurrently herewith.)

Defendants BORIS, WALTER AND ALEK are not in any position to pay disgorgement and interest. To request disgorgement and interest from these Defendants of over $11,000,000 would not be in the public interest since it would force the Defendants into bankruptcy.

Defendant mURGENT CORPORATION (hereinafter (mUrgent") also does not have the ability to pay any disgorgement or interest. As reflected in the Statement of Financial Information as of February 28, 2011 (a true and correct copy of which is attached to the Declaration of mUrgent Corporation as Exhibit "B-1" filed concurrently herewith), mUrgent had total assets of $773,308.00, and liabilities of $382,625.00.

mURGENT'S assets minus its liabilities totaled $390,683.00. Since the Commission's investigation of mUrgent, the Company's financial situation has worsened, and now the Corporation is running at a monthly operating deficit of $30,000.00.

The updated profit and loss statement attached to the Declaration of mUrgent Corporation in Support of Opposition as Exhibit "A" reflects that the monthly gross receipts after discount total $241,014; however, Defendant mUrgent Corporation experiences a monthly net operating loss of $33,163.

An evaluation of Defendant mURGENT CORPORATION's tax returns for the years 2008, 2009, and 2010 further show that the Defendants have no financial ability to pay any disgorgement. (A true and correct copy of mUGENT's 2008, 2009 and 2010 tax returns are attached to the Declaration of mUrgent Corporation as Exhibit "B-4, 5, and 6," respectively, filed concurrently herewith.) In 2008, the Company had gross receipts of $1,562,603.00. Its deductions, which included such items as advertising, salaries, and the cost of doing business, exceeded its gross receipts by $3,891,000.00. In 2009, the Company's gross receipts of $2,568,511.00 were exceeded, after deducting for costs of goods sold, by deductions totaling $5,942,997.00, resulting in negative taxable income of $4,141,697.00. In 2010, although the Company's gross receipts increased to $3,150,633.00, the gross receipts were exceeded by $2,187,960.00 for deductions and the costs of goods sold, and this was the amount of negative income for the Corporation. The situation deteriorated in

2011 as the gross receipts decreased by almost $400,000, and the situation may not improve in the future.

Although the Defendants hope that mURGENT CORPORATION will become profitable in the future, and maintain its value for its shareholders, it is not in a position to pay any disgorgement or interest. If disgorgement is ordered, it is nearly certain the shareholders of the Company will suffer a complete loss in value of their shares with the bankruptcy or in solvency of mURGENT CORPORATION.

### 4.  **NO CIVIL PENALTIES SHOULD BE IMPOSED**

When the Commission in its administrative proceedings considers imposing civil penalties, it typically examines a respondent's ability to pay disgorgement first; if the respondent has the ability to pay a penalty after paying disgorgement, the Commission will also demand an appropriate penalty amount, based on respondent's ability to pay. See *Report Pursuant to Section 308(c) of the Sarbanes-Oxley Act of 2002* at 17 (Jan. 24, 2003); *cf. Penalty-Reduction Policy for Small Entities*, 64 SEC Docket 447, 450 (Mar. 27, 1997).

As set forth above and in the supporting declarations of Defendants filed concurrently herewith, Defendants do not have the ability to pay disgorgement, plus interest, and, therefore, have no ability to pay civil penalties.

For the same reasons as set forth above regarding disgorgement, Defendants should not be assessed civil penalties.

## 5. **CONCLUSION**

For all the foregoing reasons, Defendants mURGENT CORPORATION, VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, and ALEKSANDER NEGOVAN BUGARSKI, respectfully request that this Court deny Plaintiff's request for disgorgement of $11,455,884 on a joint and several basis. In addition, Defendants mURGENT CORPORATION, VLADIMIR BORIS BUGARSKI, VLADISLAV WALTER BUGARSKI, and ALEKSANDER NEGOVAN BUGARSKI, respectively, requests that this Court deny Plaintiff's request for civil penalties of $8,308,534, $457,750, 398,511 and $470,077.

                Respectfully submitted,

                LAW OFFICES OF DARRYL C. SHEETZ

DATED: February 13, 2012

                s/Darryl C. Sheetz_____
                DARRYL C. SHEETZ
                Attorney for Defendants
                VLADIMIR BORIS BUGARSKI
                VLADISLAV WALTER BUGARSKI
                ALEKSANDER NEGOVAN BUGARSKI

                RAY & GOURDE, LLP

DATED: February 13, 2012

                s/Thomas L. Gourde_____
                THOMAS L. GOURDE
                Attorney for Defendant
                mURGENT CORPORATION


# PROOF OF SERVICE

STATE OF CALIFORNIA            )ss
COUNTY OF ORANGE               )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: 335 Centennial Way, Suite 100, Tustin, California 92780. On February 13, 2012, I served the foregoing document described as **DEFENDANTS JOINT OPPOSITION TO MOTION FOR FINAL JUDGMENT OF DISGORGEMENT AND CIVIL PENALTIES AGAINST ALL DEFENDANTS** on all interested parties listed below:

**Filed February 13, 2012 on the ECF system and served pursuant to Local Rule 5.3, to:**

<u>Attorney for Plaintiff</u>
Jason P. Lee, Esquire
Securities and Exchange Commission
email: leejas@sec.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 13, 2012, at Tustin, California.

                                    s/Darryl C. Sheetz_____

Opposition to Motion for Final Judgment of Disgorgement and Civil Penalties